**NOT FOR PUBLICATION**                                                                 **CLOSE**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALFRED WESTERMAJER,<br><br>                    Plaintiff,<br>     v.<br><br>NUTREX RESEARCH, INC.; GENERAL NUTRITION CENTERS, INC.; GNC CORPORATION; GNC HOLDINGS, INC.; AMAZON.COM, LLC; D.P.S. NUTRITION, INC.; VITAMIN SHOPPE, INC.; and DOES 1 through 100, INCLUSIVE,<br><br>                    Defendants. | **OPINION**<br><br>Civ. No. 15-7326 (WHW) (CLW) |

**Walls, Senior District Judge**

Plaintiff Alfred Westermajer moves to remand this product liability action to state court. Defendants removed this action on October 6, 2015, contending that Defendant Vitamin Shoppe had been fraudulently joined to defeat diversity jurisdiction. Decided without oral argument under Federal Rule of Civil Procedure 78, the Court grants Plaintiff's motion and remands this case because it finds that Vitamin Shoppe was not fraudulently joined.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the complaint, ECF No. 1-1, unless otherwise noted. This lawsuit concerns two dietary supplements known as "Hemo Rage" and "Lipo 6," both of which contain a compound called DMAA.[1] Compl., ECF No. 1-1 Ex. A ¶ 20-23. DMAA belongs to a class of compounds known as sympathomimetics, which are "widely abused because of their perceived ability to enhance athletic performance and in some cases induce euphora." *Id.* ¶ 21. According to the FDA, DMAA can cause "heart attacks, strokes, high blood pressure, shortness

---

[1] An amphetamine derivate drug also known as 1,3-dimethylamylamine or methylhexanamine. Compl. ¶ 20.

1

of breath, chest tightness, seizures, nervous system disorders, psychiatric disorders, and liver failure." *Id.* ¶ 23. Plaintiff contends that the labels for these supplements contained inadequate warnings and "clearly false" marketing statements, such as the claims that Hemo Rage provided "tunnel-vision like mental focus and clarity" and Lipo 6 contained "an ultra concentrated fat destroying complex." *Id.* n. 2, ¶¶ 37-39.

In late 2011, the United States military removed DMAA products from on-base stores after a Department of Defence review concluded that "some individuals may be predisposed to severe health consequences after using DMAA." *Id.* ¶¶ 44-45. In April of 2012, the FDA published a warning letter stating that DMAA is not a natural compound and could not be the active ingredient in a dietary supplement under the relevant regulatory requirements. *Id.* ¶¶ 58-59; Plotkin Cert. ECF No. 16, Ex. C. Because they contained DMAA as an active ingredient, the FDA classified Hemo Rage and Lipo 6 as "adulterated" and concluded that it had the authority to seize these products. Compl. ¶ 47; Plotkin Cert. Ex. C.

Plaintiff Alfred Westermajer, a New Jersey resident, purchased and consumed these products between 2011 and 2013, when he was diagnosed with symptoms believed to be associated with their use. Compl. ¶¶ 2, 12, 40. He asserts that "[a]s a result of taking the now-banned, adulterated product he requires the daily use of a catheter." Brief in Support of Mot. to Remand, ECF No. 18 at 1. He brought this action on March 25, 2015 in New Jersey state court against the companies he claims were involved with the packaging, distribution, and sale of the Hemo Rage and Lipo 6 that he consumed. Compl. ¶ 12.

Westermajer named as Defendants Vitamin Shoppe, Amazon.com, DPS Nutrition, Nutrex Research, and three General Nutrition Centers ("GNC") companies: GNC, Inc., GNC Holdings, Inc., and GNC Corporation. *Id.* ¶¶ 3-17. He maintains that these companies did not

recall DMAA supplements because they "had made significant investment in inventories of 'Hemo Rage' and 'Lipo-6,' such that they wanted to sell off this inventory after the FDA Warning Letters." *Id.* ¶ 51. Westermajer asserted claims for recklessness, negligence, strict product liability, design defect, failure to warn, and breaches of implied and express warranties, seeking $40,000,000 in damages. *Id.* ¶¶ 63-91; ECF No. 1-1 Ex. H. The recklessness and negligence claims were dismissed on August 21, 2015. ECF No. 1-1 Ex. B.

According to Westermajer, the GNC Defendants are Delaware corporations with their principal place of business in Pennsylvania, and GNC marketed and sold both supplements through its retail stores. Compl. ¶¶ 3-17. Amazon is a Delaware corporation with its principal place of business in Washington that marketed and sold the supplements through its website. *Id.* DPS, incorporated with its principal place of business in Pennsylvania, also sold the supplement through its website. *Id.* Nutrex, the company that formulated and manufactured both supplements, is incorporated and has its principal place of business in Florida. *Id.*

This motion concerns the defendant Vitamin Shoppe, a Delaware corporation with its principal place of business in New Jersey. *Id.* ¶ 3. Defendants removed this action on October 6, 2015, arguing that Vitamin Shoppe was fraudulently joined in an attempt to defeat diversity jurisdiction and that, in its absence, this Court has subject matter jurisdiction under 28 U.S.C. § 1332. Not. of Removal, ECF No. 1 at 1. For support, Defendants point to Westermajer's interrogatory responses. When asked to "describe in detail . . . the product involved in the incident," Westermajer provided a photo of two cans of Hemo Rage and two cans of Lipo 6. Not. of Removal ¶¶ 29-30. Defendants assert that Hemo Rage and Lipo 6 were product lines that changed over time, and the specific version of Lipo 6 that can be seen in Westermajer's photo did not contain DMAA. *Id.* ¶¶ 26, 31; ECF No. 1-1 Ex. D. They also submit that Westermajer's

"purchase records" from Vitamin Shoppe show that he only purchased Lipo 6 at that store. Not. of Removal ¶ 32; ECF No. 1-1 Ex. E. Defendants assert that, because "DMAA is not present in the product Plaintiff purchased from Vitamin Shoppe, Plaintiff has no cognizable claim against Vitamin Shoppe, and thus it was fraudulently joined." *Id.* ¶ 35. They also argue that their removal was timely, as it took place within thirty days of Westermajer's interrogatory response as well as his specification of the amount in controversy. *Id.* ¶¶ 40-47.

Westermajer denies that Vitamin Shoppe was fraudulently joined. He asserts that he purchased both products, including Hemo Rage, at that store but claims that he often used cash and "rarely used [his] Vitamin Shoppe membership information when [he] visited their retail store." Westermajer Cert., ECF No. 17 ¶¶ 5-6, Plotkin Cert., Ex. A at 17-18. He also states that the photo he provided was "illustrative, not conclusive." Reply Brief, ECF No. 20 at 1-2. Westermajer brought this motion to remand on November 5, 2015. Mot. to Remand, ECF No. 15. Defendants respond by arguing that Westermajer is judicially estopped from challenging Vitamin Shoppe's records because he stated before the state court that "[d]iscovery will adequately bear out the exact dates of purchase, as well as which products Plaintiff purchased—facts likely as well known if not better known to Defendants than to Plaintiff at present." Def. Opp. to Mot. to Remand, ECF No. 19 at 9-13. Defendants also characterize Westermajer's statements about his Vitamin Shoppe purchases as "highly suspect" because they claim that he has been "exceptionally vague as to what products he purchased, when he purchased them, and from what source." *Id.* at 13.

## STANDARD OF REVIEW

This Court has original jurisdiction over matters in which there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §

1332. "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992)). Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Briscoe*, 448 F.3d at 216 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). The removing party caries a "heavy burden of persuasion" and must establish that the claims against the non-diverse party are "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 851-53.

A court can "look to more than just the pleading allegations to identify indicia of fraudulent joinder," but it must not "step from the threshold jurisdictional issue into a decision on the merits." *Briscoe*, 448 F.3d at 219 (internal quotations omitted). A claim that can be dismissed "only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff*, 977 F.2d at 853. Before finding that joinder of a non-diverse defendant was fraudulent, a court "must rule out any possibility that a state court would entertain the cause" of action, *Briscoe*, 448 F.3d at 219, and a claim may survive this inquiry "even if it ultimately may not withstand a motion to dismiss in the state court." *Batoff*, 977 F.2d at 852-53.

## DISCUSSION

Defendants argue that Westermajer has no claim against Vitamin Shoppe. Not. of Removal ¶ 35. They point to Westermajer's Vitamin Shoppe purchaser information, which lists five retail transactions and four internet transactions at the store. ECF No. 1-1 Ex. E. The listed

transactions include purchases of Lipo 6 but not Hemo Rage. *Id.* They also direct the Court to Westermajer's response to an interrogatory asking him to "[d]escribe in detail and with specificity the product involved in the incident that is the subject of this lawsuit, including the manufacturer's name, brand name, model number, serial number or other identifying decal or feature on the product." ECF No. 1-1 Ex. C. Westermajer's response was: "Nutrex Research's 'Hemo Rage' and 'Lipo 6.' See product photos produced concurrently." *Id.*; Compl. ¶ 30. The referenced photo depicts two cans of Lipo 6 and two cans of Hemo Rage. *Id.* Defendants submitted to the Court an affidavit of a Vice President of Nutrex stating that the specific type of Lipo 6 shown in this photograph never contained DMAA. Aff. of William Amicarelle, ECF No. 1-1 Ex. D. Because Vitamin Shoppe did not record any Hemo Rage sales to Westermajer and the Lipo 6 shown in Westermajer's photograph did not contain any DMAA, Defendants assert that joinder of Vitamin Shoppe was fraudulent. Not. of Removal ¶ 35.

Defendants have not met their heavy burden of establishing that the claim against Vitamin Shoppe is "so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff*, 977 F.2d at 853. They have not established that Vitamin Shoppe's membership information is a comprehensive record of all of Westermajer's purchases from their store. Westermajer has pled that he purchased Hemo Rage, in addition to Lipo 6, from Vitamin Shoppe, and he contends that he often made his purchases from their retail store with cash and without giving his membership information. Westermajer Cert., ECF No. 17 ¶¶ 2-7. Defendants have not shown that Vitamin Shoppe's customer information profile included cash purchases or sales to customers who did not provide membership information.

Additionally, even if Westermajer did not purchase Hemo Rage from Vitamin Shoppe, Defendants have not established that the two cans of Lipo 6 depicted in the photo were the only

Lipo 6 products that Westermajer purchased from that store during the relevant period. Plaintiff concedes that "[a]t some point in time after the FDA warnings in 2012, Nutrex removed the DMAA from Hemo Rage and Lipo 6" but states that "[w]hen that occurred is still not clear." ECF No. 18 at 14. Although Defendants claim that the two photographed Lipo 6 cans did not contain DMAA, they have not established that Westermajer never bought any cans of Lipo 6 that did contain DMAA during the relevant period.

Defendants' removal fails because the limited inquiry that a court may conduct into fraudulent joinder is "far different from [a] summary judgment type inquiry." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). Even if it were not, a genuine issue of material fact remains as to whether Westermajer purchased a product containing DMAA from Vitamin Shoppe. Defendants' suggestion that Westermajer's "newly-found knowledge regarding his alleged purchase(s) is highly suspect," Opp. Br. at 13, falls far short of showing that there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Briscoe*, 448 F.3d at 216.

Defendants' judicial estoppel arguments are also unavailing. Judicial estoppel is "a fact-specific, equitable doctrine, applied at courts' discretion," *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010), to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal citation and quotations omitted). Defendants argue that, by "attacking Vitamin Shoppe's purchase records," Westermajer has taken "irreconcilably inconsistent positions" because he previously stated that the products he purchased and the dates on which he purchased them were "facts likely as well known if not better known to Defendants than to Plaintiff at present." Def. Opp. to Mot. to Remand, ECF No. 19 at 9-13. This earlier

statement was conjectural, was qualified by the word "likely," and did not go so far as to claim that Vitamin Shoppe's records were comprehensive or all-inclusive. Judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." *Kane*, 628 F.3d at 638 (citation omitted). The Court declines to apply the doctrine here.

## CONCLUSION

Vitamin Shoppe was not fraudulently joined. Plaintiff's motion to remand is granted. An appropriate order follows.

Date: December 15, 2015

_____
Hon. William H. Walls
United States Senior District Judge